
**KOOB & MAGOOLAGHAN**
By: Elizabeth L. Koob [EK0428]
<u>Attorneys for Plaintiff</u>
19 Fulton Street, Suite 408
New York, New York 10038
Tel.: (212) 406-3095

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X

**TRACY SOLOMON**,                                    **COMPLAINT**

                            Plaintiff,       06 Civ. 2375 [RWS]

      -against-                                         "ECF CASE"

**METROPOLITAN LIFE INSURANCE COMPANY**
and **OXFORD HEALTH INSURANCE CO.**.

                            Defendants.
----------------------------------------X

      Plaintiff **TRACY SOLOMON**, by and through her attorneys **KOOB & MAGOOLAGHAN**, hereby alleges as follows:

**PRELIMINARY STATEMENT**

    1. This is a suit by a participant of an employee benefit welfare plan to obtain payment of disability benefits.

    2. Plaintiff TRACY SOLOMON claims that she should be awarded a disability benefit under the Group Disability Insurance Plan ("the Plan") provided by her employer, Defendant OXFORD HEALTH INSURANCE CO. ("Oxford") and insured under a policy issued to Oxford by Defendant METROPOLITAN LIFE INSURANCE COMPANY ("MetLife").

    3. Plaintiff seeks declaratory and compensatory relief pursuant to the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. sections 1001 et seq., specifically that the Court direct the Defendants that disability benefits be awarded continued from November 26, 2002, that all back benefits due under the plan be paid with interest, and that attorneys fees be awarded Plaintiff.

## JURISDICTION

4. The Court has jurisdiction of this matter pursuant to the Employee Retirement Income and Security Act of 1974, as amended, 29 U.S.C. §§ 1001 et seq. ("ERISA"), and more particularly 29 U.S.C. §§ 1132 (a)(1)(B), (a)(3), and (c)(1) and (3), (g), as well as 28 U.S.C. §§ 1331, 2201, and 2202.

## VENUE

5. Venue is in the Southern District of New York because the Plaintiff was employed and the claim arose in this district, and because Defendants were at all relevant times authorized to do business and/or had offices in this district, pursuant to 29 U.S.C. §§ 1132 (e) and 28 U.S.C. §§1391(a) and (c).

## THE PARTIES

6. At all material time, Plaintiff TRACY SOLOMON was an employee of Oxford and a participant and beneficiary of the Oxford Health Insurance Co. Plan, and a beneficiary of an insurance policy issued by Defendant MetLife to Oxford to pay benefits to its employees under the plan.  Plaintiff was a resident of this District during the period of her employment and presently resides in Bardonia, New York.

7. Defendant MetLife is an insurance corporation organized and existing under the laws of the State of New York, with a principal place of business located at One Madison Avenue,

New York, New York 10010.  MetLife has issued a group long term disability insurance contract for the benefit of the employees of Oxford ("the policy").

8.  Upon information and belief, Defendant OXFORD is a New York corporation and at all material times was Plaintiff's employer and the plan sponsor and administrator for the ERISA welfare benefits plan established for the purpose of providing group disability benefits to Oxford employees.

## STATEMENT OF FACTS

9.  Plaintiff was born on December 12, 1959.  She has a Nursing degree and since 1988 worked in various positions, including as a Registered Nurse, an Emergency Room Nurse, Radiology Nurse, High Tech IV Nurse, and as an Associate Director of Nursing and Field Supervisor.  From June 1996 to the time of her disability in 1999 Plaintiff worked for Oxford Health Plans as a Case Manager.

10.  Plaintiff has a history, dating before the relevant date of disability here, of back problems, temporary paralysis, back pains, hip pain, bilateral sciatica, lumbar strain, greater trochaneric bursitis, lateral subluxation, and injuries to hips and elbows due to numerous falls.

11.  In January, 1999 Plaintiff was diagnosed with Fibromyalgia;  additional diagnoses documented later in the claim file include: moderate aortic insufficiency, left lumbar radiculopathy, bilateral ulnar compression, cervical radiculopathy, orthostatic intolerance, peripheral neuropathies, Chronic Fatigue Syndrome, and probable Marfan's Syndrome.

12.  On March 9, 1999 Plaintiff slipped and fell down six steps.  Due to injuries incurred Plaintiff was unable to continue working as of that date except for a failed attempt at part-time work during the period between April and July 1999.

13.  Plaintiff was approved for short term disability benefits and subsequently applied for long term disability benefits under the Plan policy.

14.  Plaintiff's claim for long term disability benefits was approved on October 5, 1999.

15.  In September, 2000 Plaintiff's benefits were terminated; however, upon Plaintiff's appeal, benefits were reinstated effective January 16, 2001.

16.  By letter dated February 6, 2001, Plaintiff's claim for long term disability benefits was approved.

17.  On or about March 25, 2001, Plaintiff suffered a head injury with ensuing neck pain and trapezious pain.

18.  Plaintiff's treating physician Dr. Jerome Meyer reported on May 3, 2001 that Plaintiff suffered from Fibromyalgia, osteoarthritis of the cervical and lumbar spine, and probable Marfan's Syndrome.

19.  By letter dated September 5, 2001 MetLife approved the continuation of long term disability benefits.

20.  By letter dated November 35, 2003 MetLife withdrew its approval for a failure to respond to requests for medical information and discontinued benefit payments to Plaintiff.

21.  Upon receipt of the requested medical records MetLife requested a claim review by Dr. Amy Hopkins.

22.  Upon information and belief  Dr. Amy Hopkins is employed on a regular basis by MetLife to review disability claims and in not an unbiased reviewer.

23.  Upon information and belief Dr. Hopkins has performed thousands of such reviews for MetLife.

24. Upon information and belief Dr. Hopkins has found the claimant to be disabled sufficiently to qualify for disability benefits in less than 10% of her claim file reviews for MetLife.

25. Plaintiff filed an appeal of the denial on June 29, 2004.  A copy of the appeal, without enclosures is annexed as Exhibit 1.

26. Plaintiff's appeal included reports from approximately eight medical providers as well as laboratory and other testing results confirming Plaintiff's ongoing disability.  The appeal noted that the claim file contained no evidence of improvement in Plaintiff's conditions which would enable her return to work.

27. Two letters from Plaintiff dated July 21, 2004 were also submitted as part of her appeal.  The letters, which explain her medical history and her current restrictions on daily life, are attached as Exhibit 2.

28. Plaintiff's counsel submitted additional medical documentation to MetLife by letter date July 22, 2004, including a letter from Dr. Susan Levine which further confirms Plaintiff's disability. Letter dated July 16, 2004 of Dr. Levine is annexed as Exhibit 3.

29. MetLife was advised by letter dated August 13, 2004 that Plaintiff was accepted as disabled by the Social Security Administration.  A copy of the decision awarding benefits, beginning November, 2001, as forwarded by Plaintiff's attorney to MetLife, is annexed as Exhibit 4.

30. MetLife arranged for a second review of the claim by a neurologist, Dr. Joseph Jares who agreed that the Plaintiff's "history, physical examination, and testing support the presence of a chronic pain disorder, possibly fibromyalgia."

31. Dr. Jares opined that "from a neurological standpoint" and "based upon the objective neurological data submitted" Plaintiff "retains the ability to work full-time in a sedentary occupation."

32. Dr. Jares' report contains the caveat however that "The diagnoses of fibromyalgia and chronic fatigue syndrome and appropriate treatment will be deferred to the expertise of rheumatology consultants."

33. MetLife also obtained a file review by a rheumatologist, Dr. Elinor Mody, M.D. who opined that there was "no evidence in the submitted [to her] medical data to substantiate decreased level of functionality" that would prevent Plaintiff from performing sedentary work with certain restrictions.

34. Upon information and belief, Drs. Jares and Mody are retained through an organization established to service the insurance industry and employers by providing medical reviews on disability claims. As such organization depends upon meeting the needs of insurance companies such as defendant MetLife, the doctors who provide the services likewise have an inherent conflict of interest.

35. Upon information and belief, and based upon the reports submitted in this case, Drs. Jared and Mody reports are tainted by their bias against finding Plaintiff disabled.

36. None of the reviewing doctors upon whom MetLife relies in upholding its termination of benefits examined Plaintiff or reviewed the claim file in its entirety.

37. By letter dated September 8, 2004, MetLife denied Plaintiff's appeal, stating "In summary, without submission of objective medical documentation to substantiate reported impairments there is no objective medical documentation to substantiate an inability to perform

each of the material duties of any gainful work or service of a sedentary nature as of December 1, 2003 onward."

38. There is no medical evidence in the record that Plaintiff's condition has improved from what it was at the time of MetLife's acceptance of the claim such that Plaintiff could now perform the duties of any occupation.

39. Moreover, the reviewers ignored completely Plaintiff's symptoms of severe debilitating fatigue, cognitive difficulties and other numerous symptoms, giving no consideration to how these symptoms would necessarily impair Plaintiff's ability to work at a full-time job.

40. The review process employed by MetLife, including but not limited to its reliance on incorrect or unsubstantiated conclusions, its constant request for information from claimant, its use of biased medical reviewers, its failure to conduct a full investigation, and its unfair interpretation of vague policy terms, show bad faith in its review of this claim.

41. There is no evidence in the record that the Plan granted MetLife the discretionary decision-making authority to interpret the terms of the policy or to make benefit decisions.

42. MetLife does not have discretionary decision-making authority over Plaintiff's claim.

43. The substantial evidence in the record supports the conclusion that Plaintiff is entitled to a continuation of benefits from January, 2004 forward, and entitled to interest on any back benefits due her.

44. Defendant MetLife unreasonably and arbitrarily and capriciously interpreted the limitations in the policy to apply to Plaintiff's claims.

45. Defendant MetLife unreasonably and arbitrarily and capriciously interpreted the terms of the Policy and the Plan to preclude coverage for Plaintiff's disabling conditions.

46. Defendant MetLife did not afford Plaintiff a fair and full review of her claim as required by law.

47. The substantial evidence supports a finding of continued entitlement to benefits.

48. Defendant MetLife has a conflict of interest in this matter in that Plaintiff's claim was reviewed by employees of MetLife and MetLife has an interest in denying disability claims, particularly claims for illnesses for which there is no known treatment or cure, such as Chronic Fatigue Syndrome and Fibromyalgia.

49. Upon information and belief, Defendant MetLife denied Plaintiff benefits under the Plan as part of its policy and practice of unjustifiably denying or terminating disability claims, particularly those where the disability is based in large part on subjective complaints or observations, in order to increase revenues for Defendant MetLife.

50. Upon information and belief Defendant MetLife knowingly and willfully violated its fiduciary and contractual obligations under the subject Policy and/or Plan by (a) wrongfully denying benefits; (b) ignoring the findings of the Social Security Administration; (d) ignoring or discrediting without good reason the reports of treating physicians; (e) ignoring time periods in deciding appeals; (f) withholding information requested by claimant; (g) arbitrarily interpreting vague contract terms in the insurer's favor; (h) neglecting to explain the basis for its decisions; (i) neglecting to inform claimant as to what information was needed to satisfy the requirements for coverage; (j) relying opinions generated on paper reviews based on only selected medical records and performed by non-independent reviewers;  (k) failing to consider all available information supporting the claim; (l) denying Plaintiff's claim without a reasonable and adequate investigation based upon all available information; (m) compelling Plaintiff to institute litigation

to recover amounts due her under the Plan; (n) failing to follow written protocols in making determinations on disability claims; and (o) otherwise failing to perform its obligations under the law and under the express terms of the Plan.

51. Plaintiff is and has been fully disabled since January, 2000 from Fibromyalgia, chronic pain disorder and other physical illnesses, including but not limited to Chronic Fatigue Syndrome.

52. Plaintiff has met her burden under the Plan of providing proof of her disability.

53. The refusal to pay disability benefits which are lawfully due and owing to Plaintiff constitutes a violation of ERISA and a wrongful withholding of benefits due under the Plan.

54. At the time of filing this complaint, the amount of unpaid disability benefits due to Plaintiff under the terms of the Disability Plan is approximately $65,000.00 plus interest.

55. Therefore Plaintiff is entitled to recover the past, present, and future benefits under the Plan.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiff respectfully prays to the Court to grant the following relief:

a. Declaration that Defendants violated Plaintiff's rights under the terms of the Plan by failing to pay Plaintiff's group disability benefits;

b. Declaration that Defendants have breached their fiduciary duties under the Plan by failing to pay disability benefits to Plaintiff;

c. Judgment ordering that Defendant MetLife pay to Plaintiff group disability benefits in accordance with the terms of the Plan from the date of termination on or about January, 2004 through the date of the judgment;

   d. Declaration that Plaintiff has the right to receive future group disability benefits in accordance with the terms of the Plan;

   e. Order reinstating any ancillary health benefits or insurance coverage which Plaintiff lost as a result of the denial of benefits;

   f.  Judgment ordering Defendant MetLife to pay the costs of this action;

   g. Judgment ordering Defendant MetLife to pay interest on all back benefits due Plaintiff under the Plan, to the full extent permitted under law;

   h.  Judgment ordering Defendant MetLife to pay Plaintiff's reasonable attorneys fees and costs to the full extent permitted under the law; and

   i.  Such other and further relief which the Court deems equitable, just and proper.


Dated: New York, New York
   March 23, 2006

               Respectfully submitted,


               **KOOB & MAGOOLAGHAN**


               _____
               By: Elizabeth L. Koob [EK0428]
               <u>Attorneys for Plaintiff</u>
               19 Fulton Street, Suite 408
               New York, New York 10038
               Tel.: (212) 406-3095