LSK&D #: 564-6014 / 995177
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TRACY SOLOMON,

                              Plaintiff,
                   Counterclaim-Defendant

             -against-

METROPOLITAN LIFE INSURANCE
COMPANY and OXFORD HEALTH
INSURANCE CO.,

                             Defendants,
                   Counterclaim-Plaintiffs,
------------------------------------------------------------x

**No. 06 CV 2375 (RWS)**

**DEFENDANTS-COUNTERCLAIM-PLAINTIFFS' LOCAL RULE 56.1 STATEMENT**

Defendants-Counterclaim-Plaintiffs Metropolitan Life Insurance Company ("MetLife") and Oxford Health Plans, Inc. ("Oxford") (incorrectly sued as Oxford Health Insurance Company), by their attorneys Lester Schwab Katz & Dwyer, LLP, respectfully submit the following statement of undisputed material facts pursuant to Local Rule 56.1.

**The Plan**

1.    Oxford established and maintains the Oxford Employee Welfare Plan (the "Plan"), an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq., (Affidavit of Margaret A. Calderon ("Calderon Aff."), ¶ 4, Ex. B (Summary Plan Description ("SPD")), ML 42-46).[1]

2.    The Plan provides long-term disability ("LTD") benefits to eligible employees. (Id., SPD, ML 8, 21)

---

[1] "ML ___" refers to the Bates-stamped page number of the Exhibit. The zeros preceding the number have been omitted.

1

3. MetLife is the Plan's claims administrator and also funds Plan benefits through a group policy of insurance. (Id., SPD, ML 42-43; ¶ 5, Ex. C ("Policy"), ML 1104-1112).

4. The Plan grants MetLife discretionary authority to interpret the Plan and determine eligibility and entitlement to Plan benefits. (Id., SPD, ML 44)

5. To be eligible for LTD benefits, a participant must be unable, due to injury or sickness, to perform her regular job duties. After the first 24 months of LTD benefit payments, the definitions of disability changes to mean the inability to perform the duties of "any gainful work or service for which you are reasonably qualified taking into consideration your training, education, experience and past earnings." (Id., SPD, ML 21)

6. The Plan requires that a participant-claimant must provide documented proof of disability "satisfactory to [MetLife]." (Id., SPD, ML 33, 34) As claims administrator, MetLife is responsible for initially reviewing claims and determining benefits eligibility. If a claim is denied, the participant may appeal to MetLife, which will render a final claim decision. (Id., SPD, ML 43-44)

7. The Plan provides that monthly LTD benefits are reduced by "Other Income Benefits," including Social Security Disability Income ("SSDI") benefits. (Id., SPD, ML 29-30) The Plan also provides that any overpayment of LTD benefits due to retroactive receipt of Other Income Benefits shall be refunded to the Plan. (Id., SPD, ML 28-29) The Plan also provides that, if a claimant signs an agreement to repay MetLife any such overpayment, MetLife will not reduce monthly LTD benefits by an estimate of SSDI benefits. (Id., SPD, ML 28)

**Solomon's LTD Benefits Claim**

8. Solomon, a registered nurse, was employed by Oxford as medical claim case manager, which is a sedentary job. (Id., ¶ 3, Ex. A ("Claim File"), ML 939-40)

9. Solomon (date of birth December 12, 1959) last worked full time at Oxford on March 16, 1999, when she claimed to be disabled due to back pain following a fall. (Id., Claim File, ML 1093)

10. Solomon signed an agreement to repay MetLife any overpayment of LTD benefits generated by receipt of SSDI benefits. (Id., Claim File, ML 930)

11. MetLife initially approved Solomon's LTD benefits claim effective September 8, 1999. (Id., Claim File, ML 926-27)

12. MetLife received medical information from Solomon's treating orthopedic surgeon Dr. L. Starace, who diagnosed her with lumbar radiculopathy and fibromyalgia (Id., Claim File, ML 892)

13. MetLife arranged for independent orthopedist Dr. Ralph Purcell to examine Solomon. In an independent medical examination ("IME") report dated August 1, 2000, Dr. Purcell found no objective basis for any disability from an orthopedic standpoint. (Id., Claim File, ML 830-34)

14. MetLife terminated Solomon's benefits effective September 19, 2000 on the basis of the IME. (Id., Claim File, ML 824) Solomon appealed (Id., Claim File, ML 812)

15. MetLife had the claim file reviewed by an independent rheumatologist, Dr. J. Lieberman. Dr. Lieberman opined that Solomon's fibromyalgia was not disabling, but that more information should be obtained regarding a neurological diagnosis. Following

3

discussion with Dr. S. Fromm, Solomon's treating neurosurgeon, Dr. Lieberman opined that neurological problems might be disabling and recommended a reassessment in three months. (Id., Claim File, ML 84, 764-65, 755)

16. MetLife reinstated benefits effective September 19, 1999. (Id., Claim File, ML 84, 757)

17. Solomon submitted a "Personal Profile" form to MetLife dated October 11, 2002. She stated that she could not go grocery shopping or drive to doctor's appointments due to weakness, dizziness and pain. She stated she could not lift over 3-4 lbs., and could not bend, twist or stretch for things. (Id., Claim File, ML 498-99)

18. MetLife had surveillance conducted of Solomon on November 12 -14, 2002. The surveillance report noted that Solomon was able to drive to a medical appointment and to the grocery store. She was able to lift and carry grocery bags. She was observed walking and bending with apparent discomfort and distress. A video[2] and written report of the surveillance were prepared. (Id., Claim File, ML 486-96).

19. In July 2003, MetLife received a Notice of Disapproved Claim dated January 27, 2003, from the Social Security Administration ("SSA"). The SSA denied Solomon's claim for SSDI benefits, stating that it "determined that your condition is not severe enough to keep you from working." (Id., Claim File, ML 445-47)

20. On August 27, September 25, and November 25, 2003, MetLife requested updated medical records from Solomon. (Id., Claim File, ML 442, 440, 438-39)

---

[2] The surveillance video is submitted as part of Exhibit A to the Calderon Affidavit.

4

21.     By letter dated November 25, 2003, MetLife notified Solomon that, as no recent documentation had been submitted to support her disability claim, benefits would be terminated effective December 1, 2003. (Id., Claim File, ML 438-39)

22.     MetLife received various medical records from Solomon and her treating physicians in December 2003 and January 2004. Among these were:

    (i)    Dr. Fichman's (rheumatologist) office notes describing treatment for Solomon's fibromyalgia with trigger point injections of thiamine. Dr. Fichman also described Solomon as "neurologically she is grossly intact." (Id., Claim File, ML 411, 427)

    (ii)    Dr. Fromm's report dated March 20, 2003, describing his examination of Solomon. His diagnosis was peripheral polyneuropathy, with symptoms of decreased sensation in fingers and hands. Her gait was described as normal. He recommended MRIs of spine and head to determine whether there were cerebral or spinal cord abnormalities. Dr Fromm did not opine whether Solomon was unable to work. (Id., Claim File, ML 420)

    (iii)    October 10, 2003 report of MRIs of brain and cervical spine. Brain MRI was "normal." Cervical spine MRI revealed "mild degenerative disc disease at C4-6 with mild spondylosis and arthrosis....There is no herniated disc or other epidural mass. There are no interdural masses. The spinal cord demonstrates normal signal intensity. The cranocervical junction is normal." (Id., Claim File, ML 422-23)

23.     On December 10, 2003, MetLife sent a copy of its claim file to Solomon's attorney upon request. (Id., Claim File, ML 424)

24.     MetLife referred the file for review by independent physician consultant Dr. Amy Hopkins, Board-certified in internal and occupational medicine. Dr. Hopkins assessed each of Solomon's reported diagnoses and conditions and opined that none of them was "objectively documented" to preclude Solomon from returning to work as of November 30, 2003 (Id., Claim File, ML 401-404) In particular, Dr. Hopkins noted that Solomon's gait and motion strength were found to be normal; there was no evidence of

5

radiculopathy, myopathy, plexopathy, disc herniation, spinal stenosis, cord compression or nerve root compression; the video surveillance was inconsistent with Solomon's self-reported symptoms; there was no medical information about sleep disorders or a heart condition.  (Id., Claim File, ML 403-04)

25.   MetLife sent Dr. Hopkins' report to treating physicians Drs. Fromm and Fichman for comments.  (Id., Claim File, ML 392, 394)

26.   In a letter dated January 14, 2004, MetLife terminated Solomon's benefits effective December 1, 2003.  (Id., Claim File, ML 406-08)  MetLife explained that its decision was based on the report of an independent reviewing physician, surveillance reports and a lack of supporting medical information.  MetLife notified Solomon of her right to appeal.  (Id.)

27.   Solomon, through her attorney, filed an appeal on April 5, 2004.  (Id., Claim File, ML 360)

28.   MetLife received additional medical information from Solomon and her attorney including information from (i) Dr. Fromm (Id., Claim File, ML 256-57) in which he reported diagnoses of fibromyalgia and neuropathy and (ii) Dr. Susan Levine, an infectious disease specialist, who diagnosed Solomon with chronic fatigue syndrome ("CFS") and opined that Solomon remained completely disabled from working.  (Id., Claim File, ML 261-62)

29.   Solomon's attorney (Aba Heiman) also submitted letters dated June 29, July 16, 2004 enclosing medical reports, articles and summarizing the medical information supporting his client's claim.  (Id., Claim File, ML 246-50, 251-351, 158-243)

30. Attorney Heiman submitted an SSA Notice of Decision dated July 28, 2004 awarding Solomon SSDI benefits. (Id., Claim File, ML 150-157)

31. MetLife sent the claim file for evaluation of Solomon's functional capacities to Dr. Joseph Jares, Board-certified in neurology. In his report dated September 3, 2004 (Id., Claim File, ML 131-42), Dr. Jares opined that, from a neurological standpoint, Solomon retained the functional capacity to work full time in a sedentary occupation. He stated:

> She has been repeatedly described as having intact neurological function with no evidence of weakness, atrophy, reflex loss or incontinence. Her MRI and EMG findings do not point to a process so severe that Ms. Solomon could not work in a sedentary position.

(Id., Claim File, ML 138)

32. MetLife also referred the file to Dr. Elinor Mody, Board-certified in rheumatology. In her report dated September 3, 2004, Dr. Mody opined that the medical documentation did not substantiate a decreased level of functionality that would preclude Solomon from working at a sedentary job. (Id., Claim File, ML 143-47)

33. In a letter dated September 8, 2004, MetLife upheld its decision to terminate Solomon's benefits, stating that its determination was not based on the presence of certain diagnoses, "but rather on current functional limitations supported by recent objective medical evidence that would substantiate symptoms consistent with those reported by the patient and medical providers." (Id., Claim File, ML 128) MetLife noted that the file had been reviewed by independent specialists in rheumatology and neurology who found that the objective medical information did not support a functional inability to work in a sedentary occupation. (Id., Claim File, ML 128-129)

34. Following her appeal to the SSA, Solomon was awarded a primary SSDI monthly benefit of $1,348.80 commencing October 1, 2001.  (Id., ¶ 6, Ex. D)

35. Solomon's LTD monthly benefit from September 18, 1999 through November 30, 2003 was $2,642.85 which represented 60% of her pre-disability monthly earnings without any offsets.  (Id., ¶ 7)

36. For the period October 1, 2001 through November 30, 2003, an overpayment of LTD benefits to Solomon of $29,738 was generated due to Solomon's retroactive receipt of SSDI benefits.  (Id., ¶ 8)

Dated:   New York, New York
         March 18, 2008

            Respectfully submitted,

            LESTER SCHWAB KATZ & DWYER, LLP

            _____
            Allan M. Marcus (AM-9027)
            120 Broadway
            New York, New York  10271
            (212) 964-6611
            Attorneys for Defendants, Counterclaim Plaintiffs
            Metropolitan Life Insurance Company and Oxford
            Health Insurance Company

TO:

Elizabeth L. Koob (EK-0428)
KOOB & MAGOOLAGHAN
221 Devoe Avenue
Yonkers, New York 10705
Tel: (914) 964-8888
Attorneys for Plaintiff,
Counterclaim Defendant